

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | P. Michael Mahoney | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 50452 | **DATE** | 1/24/2002 |
| **CASE TITLE** | COLEMAN vs. MASSANARI | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due_____ .  Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    For the reasons stated on the attached Memorandum Opinion and Order, Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is hereby granted.  Enter attached Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

number of notices

JAN 24 2002
date docketed

docketing deputy initials

1/24/2002
date mailed notice

gg
mailing deputy initials

**Document Number**

14

tml

courtroom deputy's initials

U. S. DISTRICT COURT
CLERK

2002 JAN 24  PM 2: 11

FILED
Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION



| | | |
|---|---|---|
| MARTHA J. COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  00 C 50452 |
| | ) | |
| v. | ) | Philip G. Reinhard |
| | ) | P. Michael Mahoney |
| LARRY G. MASSANARI, | ) | |
| ACTING COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, (Plaintiff), seeks judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner). See 42 U.S.C. §§ 405(g), 1383(c)(3). The Commissioner's final decision denied Plaintiff's application for Supplemental Security Income (SSI) Benefits pursuant to Section 223 of the Social Security Act (the Act). This matter is before the Magistrate Judge pursuant to consents filed by both parties on March 26, 2001. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

I.    **BACKGROUND**

Plaintiff filed her application for SSI benefits on October 8, 1997, alleging disability since March 12, 1996. (Tr. 88-100). Plaintiff's application was denied on December 10, 1997. (Tr. 51). On February 28, 1998, Plaintiff filed a Request for Reconsideration. (Tr. 57-59). That request was denied on May 27, 1998. (Tr. 60-62). Plaintiff then filed a request for an administrative hearing on July 10, 1998. Plaintiff appeared, with counsel, before an Administrative Law Judge (ALJ) on November 12, 1998. (Tr. 34-50). The ALJ, in a written opinion, denied Plaintiff's application for

benefits on March 24, 1999. (Tr. 20-33). Plaintiff subsequently filed a request for review of that decision with the Appeals Council on March 30, 1999. (Tr. 8-19). On October 25, 2000, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the instant claim in federal court on December 22, 2000.

## II.  FACTS

At the time of the hearing, Plaintiff was thirty-eight years old. (Tr. 38). Plaintiff testified that she had completed school through the tenth grade, had never been in the military, had worked for four days since applying for benefits and had used drugs and alcohol on one occasion since her release from prison in October of the previous year. (Tr. 38-39). Plaintiff stated that she does attend AA and NA meetings, receives counseling on a weekly basis and is treated by a psychiatrist, Dr. Daly, every three months. (Tr. 39-40). Plaintiff reported that in addition to her individual counseling sessions, she also attends group sessions and that she is taking Sinequan. (Tr. 41). As to her therapy sessions, Plaintiff reported that she addresses her depression and anger. (Tr. 42). She stated that there are times when she is unable to take her medication because it makes her too drowsy. (Tr. 42). Plaintiff testified that the dosage of her medication had been increased because she was unable to sleep at night and that her doctor had indicated that he may recommend a different drug since the increase resulted in Plaintiff sleeping throughout the day. (Tr. 49). When asked how she spent her time, Plaintiff replied that she slept and often the only time she went out was to go to therapy. (Tr. 39 and 42). Plaintiff reported that she had recently lost a lot of weight and only ate one meal each day, that she did not socialize and that she occasionally watches TV. (Tr. 43). Plaintiff has been treated for depression since 1994 or 1995 and stated that she went to prison for an "anger thing." (Tr. 44-45). Plaintiff reported that she was not high or drunk when she

2

got into trouble with the policeman resulting in her incarceration. (Tr. 45). Plaintiff had been in

prison two or three times prior to that. (Tr. 45-46). Plaintiff stated that she had never held a job for

over a year. (Tr. 39). Plaintiff testified that she had held a number of jobs over the last fifteen

years but that she had not had any of them for long because she either did not like the job or just

did not want to go to work. (Tr. 40). Plaintiff also stated that she had had some problems with her

knees, that she experienced pain and swelling and that she was not able to afford an MRI to

determine the cause of the problem. (Tr. 44).

Vocational Testimony

Mr. Lee Knutson, a vocational expert, testified at Plaintiff's hearing. (Tr. 46-49). The ALJ

asked Mr. Knutson the following:

> I have a person here with a tenth grade education, with no work history at age
> thirty-eight, and she has had a history of drug and alcohol abuse. She has had some
> depression and personality problems. However the doctor who evaluated her on this
> Exhibit 6F is – says she could – that she was not significantly limited in ability to
> remember locations and procedures, to understand and remember instructions. She
> would have problems, limited problem with remembering detailed instructions. She
> would be able to concentrate, short and simple instructions, but problems with,
> again, problems with detailed. She could perform activities within a schedule on a
> – not significantly a big problem. Ability to sustain ordinary routine without special
> supervision was not a big problem. Ability to make simple work related decisions.
> She would have some moderately limited social interaction. She might have a
> problem with ability to accept instruction or respond appropriately to criticism. She
> could – moderately limited in changing work situations and in setting goals. Do you
> feel under those circumstances she might be able to do some types of jobs? (Tr. 46-
> 47).

Mr. Knutson responded that there were some types of jobs Plaintiff would be able to do under

those circumstances. (Tr. 47). Mr. Knutson testified that the number of unskilled jobs in the

medium exertional category that are not affected by minor impairments in concentration is 7,075.

(Tr. 47-48). The ALJ then inquired as to how that number would be affected if Plaintiff had only a fair ability to follow work rules or relate to co-workers, a poor ability to deal with the public and use judgment, a fair ability to interact with supervisors, a poor ability to deal with stress, functional independence or concentration, a fair ability to carry out simple instructions and a poor ability to remain emotionally stable, predictable and reliable. (Tr. 48). Mr. Knutson replied that as far as reliability was concerned, if Plaintiff was unable to report to work on a sustained basis and relate appropriately with peers and supervisors then she would not be employable. (Tr. 48-49). Mr. Knutson pointed out that it was a matter degree. (Tr. 49).

## III. **MEDICAL HISTORY**

Medical records submitted by Plaintiff indicate that in 1992 through 1995 she was treated for vaginitis, asthma, bronchitis and a urinary tract infection. (Tr. 287-307). Notes from October 21, 1993, indicate that Plaintiff had been abusing her inhalers and was argumentative during a discussion of the proper use of her inhalers. (Tr. 289). In notes from August 9, 1995, the treating physician, Dr. Merry, reported that Plaintiff requested he complete some disability paperwork for her. (Tr. 307). Dr. Merry indicated that there was no evidence of chronic respiratory disease and that he completed her disability information as best he could but that he suspects Plaintiff is trying to manipulate the system. (Tr. 307). Medical records from Plaintiff's incarceration beginning in April of 1997, indicate that she was treated for asthma, knee pain and depression. (Tr. 170-179). On April 29, 1997, Plaintiff was evaluated by a psychologist, John Brown. (Tr. 188). Mr. Brown indicated that Plaintiff suffered from alcohol and cocaine dependence and noted that she would be scheduled for a psychiatric evaluation. (Tr. 88). Plaintiff reported to Mr. Brown that she had no

history of mental illness and no current symptoms of mental illness. (Tr. 188). Plaintiff received a psychiatric evaluation on June 25, 1997, by Dr. Stephen Rivera, MD. (Tr. 180-181). Dr. Rivera indicated that Plaintiff had been depressed for 2 ½ years, had no homocidality, suicidality, psychosis or mania, has insomnia, a normal appetite, is easily agitated, has temper problems, a low tolerance for people and a nineteen year history of alcohol dependence and a nine year history of cocaine dependence. (Tr. 180). Plaintiff reported that she first saw a psychiatrist at the age of twenty-six for depression but has never been hospitalized for mental illness. (Tr. 180). Dr. Rivera noted that Plaintiff was well dressed and groomed, was oriented and alert and was somewhat depressed and irritable, but cooperative, responsive, interactive and pleasant. (Tr. 80). Dr. Rivera diagnosed Plaintiff with a dysthymic disorder with a history of alcohol and cocaine dependence but did not prescribe any medication as Plaintiff refused psychotropic medication so she would be eligible for a work release program. (Tr. 181).

Mental Health History

Treatment notes from Jane Addams Mental Health Center indicate that Plaintiff has been treated there, on and off, since 1995. (Tr. 192-212). Notes from March 27, 1995, report that Plaintiff's children were removed from her custody in December of 1994 by DCFS. (Tr. 211). Plaintiff reported that she had been trying to stay off drugs and alcohol and the counselor reported that Plaintiff tended to minimize her drug intake. (Tr. 211). Plaintiff reported suicidal ideation. (Tr. 211). The counselor noted that Plaintiff was hostile with some paranoid ideation, had some anti-social traits and was suffering from depression. (Tr. 212). Plaintiff was interviewed on June 18, 1996, and a personal history was recorded at that time. (Tr. 208-210). That report noted that

Plaintiff had been referred by a community agency for treatment of her depression. (Tr. 208). Plaintiff reported that she had experienced depression over the previous two years and that previous treatment had been partially successful. (Tr. 208). The report indicated that Plaintiff had been experiencing sleep disturbances including insomnia, sleeping too much, restlessness and fatigue. (Tr. 210). Notes from June 24, 1996, indicate that Plaintiff was seeking treatment from Jane Addams in order to comply with DCFS and have her children returned to her. (Tr. 207). Plaintiff was reported to be hostile and verbally aggressive, blaming her children and DCFS for her situation. (Tr. 207). Progress notes from September 1996 indicate that Plaintiff had made considerable progress but was in an unhealthy relationship and was impatient with the process of reunification with her children. (Tr. 204-206). More recent treatment notes from Jane Addams indicate that on February 9, 1998, Plaintiff walked-in for assistance in regards to DCFS. She reported that the homemaker did not show up for her supervised visitation transportation. (Tr. 193). Plaintiff was referred to the Sinnissippi Center for mental health services. (Tr. 193-194).

On February 11, 1998, a clinical assessment was conducted as to Plaintiff at Sinnissippi. (Tr. 214-227). In that report, it was noted that Plaintiff reported her main complaint as mild depression that she had been experiencing for the previous two and a half years which was having a negative effect on her health and personal relationships. (Tr. 214). Plaintiff reported that previous treatment was partially successful. (Tr. 214). With regard to substance abuse, Plaintiff reported increased alcohol abuse before her children were removed from her custody, resulting in black-outs, loss of control and violent behavior, with seven arrests during that time. (Tr. 216). Plaintiff reported that she also began using crack cocaine at that time but that she had not used

6

drugs since November 1996. (Tr. 216). The interviewer reported Plaintiff to be oriented, steady and appropriate with normal attention and train of thought. (Tr. 217). She was reportedly disheveled and angry with her recent memory impaired, insight level impaired, judgment impaired and of below average intelligence. (Tr. 217). Plaintiff scored a 23 on the Beck Depression scale, which is in the moderate/severe range. (Tr. 218). Plaintiff reported her symptoms had increased over the previous two weeks and that she had stopped taking her anti-depressant two weeks ago. (Tr. 216 and 218). Notes of Dr. Edward Burke, a psychiatrist at Sinnissippi, from February 16, 1998, indicate that Plaintiff was feeling anxious and depressed. (Tr. 228). Progress notes from March 4, 1998, indicate that Plaintiff's attitude and health had improved and that she had not used any drugs or alcohol. (Tr. 229).

A letter to Plaintiff's attorney, dated November 10, 1998, from Sinnissippi indicates that Plaintiff's diagnosis is major depression, recurrent type, alcohol and cocaine dependence in full, sustained remission, intermittent explosive disorder and a mixed personality disorder with dependent and anti-social features. (Tr. 247). Also, Dr. James Daly, from the Sinnissippi Center, completed a questionnaire in regard to Plaintiff's mental impairment and her ability to do work-related activities on August 25, 1998. (Tr. 249-252). Dr. Daly indicated that Plaintiff had a GAF score of 52, a score of 9 on June 11, 1998, and 8 on August 13, 1998, on the Beck Depression Inventory and a score of 40 on June 11, 1998, and 34 on August 13, 1998, on the Beck Anxiety Inventory. (Tr. 249-250). As to Plaintiff's functioning, Dr. Daly indicated that Plaintiff's ability to follow work rules, relate to co-workers and interact with supervisors is fair, while her ability to deal with the public, use judgment, deal with work stress, function independently and maintain

7

attention and concentration is poor. (Tr. 251). Dr. Daly indicated that Plaintiff's ability to understand, remember and carry-out detailed or detailed but not complex job instructions is poor and that her ability to understand, remember and carry out simple job instructions is fair. (Tr. 251). Lastly, Dr. Daly noted that Plaintiff's ability to behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability is poor, but that she has the ability to maintain her personal appearance. (Tr. 251).

A Psychiatric Review Technique Form (PRTF) was completed as to Plaintiff by Carl Hermsmeyer, PhD on December 5, 1997. (Tr. 160-168). Dr. Hermsmeyer indicated that there was insufficient evidence available to fully document the presence of a disabling condition. (Tr. 160). The ALJ also completed a PRTF as to Plaintiff on March 24, 1999. (Tr. 30-33). The ALJ indicated that Plaintiff had an affective disorder, personality disorder and substance abuse disorder. (Tr. 30). The ALJ determined that Plaintiff suffered from depressive syndrome characterized by anhedonia, sleep disturbance, decreased energy, feelings of guilt or worthlessness and difficulty concentrating or thinking. (Tr. 31). The ALJ also found that Plaintiff suffered from an anti-social personality disorder. (Tr. 31-32). As to the severity of her conditions, the ALJ determined that Plaintiff's activities of daily living were slightly restricted, that she had moderate difficulties in social functioning and she often experienced deficiencies in concentration, persistence or pace but never had episodes of deterioration or decompensation. (Tr. 32-33).

On May 6, 1998, Kirk Boyenga, PhD completed a Mental Residual Functional Capacity (RFC) Assessment and a PRTF as to Plaintiff. (Tr. 234-246). In his mental RFC assessment, Dr. Boyenga determined that Plaintiff was moderately limited in her ability to understand and

remember detailed instructions, her ability to carry out detailed instructions, her ability to maintain attention and concentration for extended periods, her ability to interact appropriately with the public, her ability to respond appropriately to changes in her work setting and her ability to set realistic goals or make plans independently of others. (Tr. 234-235). Dr. Boyenga noted that Plaintiff is impaired with regard to concentration and memory but that she is capable of performing simple tasks. Her social skills are impaired, but she can function in settings where public contact is reduced. Her adaptive skills are impaired, but she is still able to do routine, repetitive tasks, where independent planning is not required. (Tr. 236). In completing a PRTF in regard to Plaintiff, Dr. Boyenga found that she suffered from an affective disorder, characterized by depression, and a personality disorder, characterized by inflexible and maladaptive personality traits. (Tr. 238-244). Dr. Boyenga determined that those impairments resulted in slight limitations in Plaintiff's activities of daily living, moderate limitations in social functioning and deficiencies of concentration persistence or pace that occur often. (Tr. 245).

## IV.  **STANDARD OF REVIEW**

The court may affirm, modify, or reverse the ALJ's decision outright, or remand the proceeding for rehearing or hearing of additional evidence. 42 U.S.C. § 405(g). Review by the court, however is not *de novo*; the court "may not decide the facts anew, reweigh the evidence or substitute its own judgment for that of the ALJ." *Meredith v. Bowen*, 833 F.2d 650, 653 (7th Cir. 1987) (citation omitted); *see also Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). The duties to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide the case accordingly are entrusted to the commissioner; "[w]here conflicting evidence allows

reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the Commissioner's delegate the ALJ)." *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971), *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). If the Commissioner's decision is supported by substantial evidence, it is conclusive and this court must affirm. 42 U.S.C. § 405(g); *see also Arbogast v. Bowen*, 860 F.2d 1400, 1403 (7th Cir. 1988). "Substantial evidence" is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The Seventh Circuit demands even greater deference to the ALJ's evidentiary determinations. So long as the ALJ "minimally articulate[s] his reasons for crediting or rejecting evidence of disability," the determination must stand on review. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). Minimal articulation means that an ALJ must provide an opinion that enables a reviewing court to trace the path of his reasoning. *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987), *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). Where a witness credibility determination is based upon the ALJ's subjective observation of the witness, the determination may only be disturbed if it is "patently wrong" or if it finds no support in the record. *Kelley v. Sullivan*, 890 F.2d 961, 965 (7th cir. 1989), *Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989). "However, when such determinations rest on objective factors of fundamental implausibilities rather than subjective considerations, [reviewing] courts have greater freedom to review the ALJ decision." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994), *Yousif v. Chater*, 901 F.Supp. 1377, 1384 (N.D.Ill. 1995).

## V.  FRAMEWORK FOR DECISION

The ALJ concluded that Plaintiff did not meet the Act's definition of "disabled," and accordingly denied her application for benefits. "Disabled" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382(c)(3)(A).  A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382(c)(3)(C). *See Clark v. Sullivan*, 891 F.2d 175, 177 (7th Cir. 1988).

The Commissioner proceeds through as many as five steps in determining whether a claimant is disabled.  20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (1998).[1]  The Commissioner sequentially determines the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets or is medically equivalent to an impairment in the Commissioner's Listing of Impairments; (4) whether the claimant is capable of performing work which the claimant performed in the past; and (5) whether the claimant is capable of performing any other work in the national economy.

At Step One, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520 (a),(b).  Substantial gainful activity is work that

---

[1]The Commissioner has promulgated parallel regulations governing disability determinations under Title II and Title XVI. See 20 C.F.R. Ch. III, Parts 404, 416.  For syntactic simplicity, future references to Part 416 of the regulations will be omitted where they are identical to Part 404.

involves doing significant and productive physical or mental duties that are done, or intended to be done, for pay or profit. 20 C.F.R. § 404.1510. If the claimant is engaged in substantial gainful activity, he is found not disabled, regardless of medical condition, age, education, or work experience, and the inquiry ends; if not, the inquiry proceeds to Step Two.

Step Two requires a determination whether the claimant is suffering from a severe impairment.[2] A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The claimant's age, education, and work experience are not considered in making a Step Two severity determination. 20 C.F.R. § 404.1520(c). If the claimant suffers from severe impairment, then the inquiry moves on to Step Three; if not, then the claimant is found to be not disabled, and the inquiry ends.

At Step Three, the claimant's impairment is compared to those listed in 20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 1. The listings describe, for each of the major body systems, impairments which are considered severe enough *per se* to prevent a person from doing any significant gainful activity. 20 C.F.R. §§ 404.1525(a). The listings streamline the decision process by identifying certain disabled claimants without need to continue the inquiry. *Bowen v. New York*, 476 U.S. 467 (1986). Accordingly, if the claimant's impairment meets or is medically equivalent to one in the listings, then the claimant is found to be disabled, and the inquiry ends; if not, the inquiry moves on to Step Four.

At Step Four, the Commissioner determines whether the claimant's residual functional

---

[2]The claimant need not specify a single disabling impairment, as the Commissioner will consider the combined affect of multiple impairments. See, e.g., 20 C.F.R. § 404.1520(c). For syntactic simplicity, however, this generic discussion of the Commissioner's decision-making process will use the singular "impairment" to include both singular and multiple impairments.

capacity allows the claimant to return to past relevant work. Residual functional capacity is a measure of the abilities which the claimant retains despite his impairment. 20 C.F.R. § 404.1545(a). Although medical opinions bear strongly upon the determination of residual functional capacity, they are not conclusive; the determination is left to the Commissioner, who must resolve any discrepancies in the evidence and base a decision upon the record as a whole. 20 C.F.R. § 404.1527(e)(2); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). Past relevant work is work previously performed by the claimant that constituted substantial gainful activity and satisfied certain durational and recency requirements. 20 C.F.R. § 404.1465; Social Security Ruling 82-62. If the claimant's residual functional capacity allows him to return to past relevant work, then he is found not disabled; if he is not so able, the inquiry proceeds to Step Five.

At Step Five, the Commissioner must establish that the claimant's residual functional capacity allows the claimant to engage in work found in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1566. The Commissioner may carry this burden by relying upon vocational expert testimony, or by showing that a claimant's residual functional capacity, age, education, and work experience coincide exactly with a rule in the Medical-Vocational Guidelines (the "grids"). *See* 20 C.F.R. Ch. III, Part 404 Subpart P, Appendix 2; *Walker v. Bowen*, 834 F.2d 635, 640 ( 7th Cir. 1987); Social Security Law and Practice, Volume 3, § 43:1. If the ALJ correctly relies on the grids, vocational expert evidence is unnecessary. *Luna v. Shalala,* 22 F.3d 687, 691-92 (7th Cir. 1994). If the Commissioner establishes that sufficient work exists in the national economy that the claimant is qualified and able to perform, then the claimant will be found not disabled; if not, the claimant will be found to be disabled.

## VI.    ANALYSIS

The court will proceed through the five step analysis in order.

A.  Step One: Is the claimant currently engaged in substantial gainful activity?

In performing the Step One Analysis the ALJ found that Plaintiff had not engaged in any substantial gainful activity at any time relevant to his decision issued on March 24, 1999. (Tr. 27).

Under ordinary circumstances, a claimant is engaged in substantial gainful activity if the claimant's earnings averaged more than seven hundred and forty dollars per month for years after January 1, 2001. (20 C.F.R. § 1574 (b) (2) Table 1, as modified by 65 FR 82905, December 29, 2000).

The finding of the ALJ as to Step One of the Analysis is not challenged by either party and the court finds no reason to disturb this finding. The ALJ's determination as to Step One of the Analysis is affirmed.

B. Step Two:  Does the claimant suffer from a severe impairment?

In performing the Step Two Analysis the ALJ found Plaintiff suffered from severe impairments. Specifically, the ALJ found that the medical evidence established Plaintiff suffered from depression, personality disorders and a history of drug addiction and alcoholism. (Tr. 27).

Substantial evidence exists to support the ALJ's determination that Plaintiff suffers from severe impairments. This finding is not challenged by either party and the court finds no reason to disturb it. The ALJ's finding as to Step Two of the Analysis is affirmed.

C.     Step Three:  Does claimant's impairment meet or medically equivalent to an impairment in the Commissioner's listing of impairments?

14

In performing the analysis for Step Three the ALJ determined that Plaintiff's impairments do not meet or equal any impairment in Appendix 1 to Subpart P of Regulations number 4. (Tr. 27). The ALJ found that there was no medical evidence to substantiate Plaintiff's claim of severe limitations resulting from a knee injury. (Tr. 25). The ALJ determined that the report of Plaintiff's psychiatrist was not entitled to persuasive weight because it is inconsistent with the great weight of the evidence and findings. (Tr. 25). The ALJ noted that Dr. Daly's assessment of Plaintiff's GAF at 55 places Plaintiff in the category of individuals with moderate but not disabling limitations and is therefore inconsistent with his assessment of Plaintiff's limitations. (Tr. 25). The ALJ also found that Dr. Daly's assessment did not provide sufficiently detailed clinical observations. (Tr. 25).

Plaintiff asserts that the ALJ erred in failing to accord controlling weight to Dr. Daly's opinion and in so doing "The Administrative Law Judge really totally 'played doctor' in this case." (Plaintiff's Memorandum at 6-8, filed 5/11/2001). Plaintiff claims that Dr. Daly's findings are entitled to controlling weight if his opinion is well-supported by acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. (Plaintiff's Memorandum at 7, filed 5/11/2001) (citing 20 C.F.R. §404.1527(d)(2)). In her testimony on November 12, 1998, Plaintiff testified that she was being treated by Dr. Daly, a psychiatrist at Sinnissippi, and that she saw him every three months. (Tr. 40). Plaintiff's treatment records indicate that she was referred to Sinnissippi in February of 1998 and none of the records provided by Sinnissippi are treatment records or progress notes from Plaintiff's appointments with Dr. Daly. (Tr. 214-221). Further, Plaintiff has provided no records to indicate that she was treated by Dr.

Daly for any length of time or with any consistency. As the ALJ noted, Dr. Daly's opinions, as expressed in the questionnaire he filled out at Plaintiff's attorney's request, are not substantiated by any treatment records and are not consistent with other evidence included in the administrative record. Plaintiff has provided no adequate justification why Dr. Daly's opinions should be accorded controlling weight.

In finding that Plaintiff's impairments do not meet or medically equal those included in the Listings, the ALJ relied on the findings of consulting experts and on the evidence provided by Plaintiff in the form of medical records. .

Substantial evidence exists to support the ALJ's finding and the court finds no reason to disturb it. Therefore, the ALJ's determination as to Step Three of the Analysis is affirmed.

D.      Step Four:  Is the claimant capable of performing work which the claimant performed in the past?

In performing the analysis for Step Four, the ALJ determined that Plaintiff has no past relevant work. (Tr. 27). The finding of the ALJ as to Step Four of the Analysis is not challenged by either party and the court finds no reason to disturb this finding. The ALJ's determination as to Step Four of the Analysis is affirmed.

E.      Step Five: Is the claimant capable of performing any work existing in substantial numbers in the national economy?

At Step Five The ALJ determined that although Plaintiff's nonexertional limitations compromise her ability to perform work at all exertional levels, there existed a significant number of jobs in the national economy that she can perform. (Tr. 28). Specifically, the ALJ found that

Plaintiff is a younger person, with a high school equivalency education who does not have any acquired work skills that are transferable. (Tr. 28). The ALJ determined that considering the types of work Plaintiff is functionally capable of performing, in combination with her age, education and work experience, she can be expected to make a vocational adjustment to work which exists in significant numbers in the national economy. (Tr. 28). The ALJ found that, in total, there are 183,500 jobs in the regional economy that Plaintiff can perform with her vocational profile and RFC. (Tr. 28).

Plaintiff asserts that the ALJ failed to reconcile the testimony of the vocational expert in his analysis. (Plaintiff's Memorandum at 10, filed 5/11/2001). Plaintiff points out that in his testimony, the vocational expert conceded that an individual who could not demonstrate reliability or relate appropriately to peers and supervisors would not be employable. In his PRTF, the ALJ found that Plaintiff was slightly limited in her activities of daily living, moderately limited in social functioning, often experienced deficiencies of concentration, persistence or pace and had never had an episode of deterioration or decompensation. (Tr. 32-33). The limitations that would result in Plaintiff being unemployable were those identified by Dr. Daly. The ALJ chose not to give Dr. Daly's opinion controlling weight. For the reasons stated in this court's analysis at Step Three, this court finds the ALJ did not fail to reconcile the vocational expert's testimony with his own findings, as Plaintiff claims.

In determining a mental RFC, the first step in the procedure is to assess the nature and extent of the claimant's mental limitations and restrictions (20 C.F.R. § 416.945 (c)). This information is then used to determine the Mental RFC. In order to properly assess an individual's

17

level of functioning due to a mental disorder, evaluation of the impairment must take into account the severity of the impairment over a period of time.(20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 1 12.00 (d)). This information is then used to complete claimant's vocational assessment. In this case, the ALJ relied on Plaintiff's treatment records, mental health evaluations performed by experts and Plaintiff's testimony during the hearing to determine that she retained the Residual Functional Capacity to perform the functions of work.

Substantial evidence exists to support the ALJ's finding and the court finds no reason to disturb it. Therefore, the ALJ's determination as to Step Five of the Analysis is affirmed.

Finally, this court notes that the ALJ found that Plaintiff would not be disabled if she stopped using drugs and alcohol and that in accordance with Section 105 of Public Law 104-121, Plaintiff is ineligible for disability payments. (Tr. 28). That 1996 amendment of the Social Security Act provides

> (C) An individual shall not be considered to be disabled for purposes of this title [42 USCS §§§§ 401 et seq.] if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled. 42 U.S.C. §423(d)(2)(C).

Materiality is to be determined in accordance with 20 C.F.R. 416.935, which provides that the key factor to consider in determining whether substance addiction is a contributing factor is whether a claimant would still be found disabled if he or she stopped using drugs or alcohol. 20 C.F.R. 416.935(b)(1). The ALJ determined that the medical evidence established that Plaintiff would not be disabled if she stopped using drugs and alcohol and that Plaintiff was therefore not entitled to benefits. (Tr. 27). Plaintiff asserts, and Defendant agrees, that the finding by the ALJ regarding Plaintiff's drug and alcohol abuse is gratuitous. (Plaintiff's Memorandum at 11, filed 5/11/2001

and Defendant's Memorandum at 11, filed 6/15/2001). This court finds the ALJ's determination with respect to the materiality of Plaintiff's substance addiction somewhat baffling. There is no indication in the records provided that Plaintiff's previous substance abuse is in any way material to her impairments. Also, as Defendant notes, the ALJ was not required to make any finding as to materiality because he had already found that Plaintiff was not disabled pursuant to the sequential analysis. (Defendant's Memorandum at 11, filed 6/15/2001). While the ALJ may have erred in addressing Plaintiff's previous substance abuse disorder, that error is harmless and does not in any way impact his finding at Step Five that Plaintiff is not disabled.

## VII.   CONCLUSION

For the above reasons, Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is hereby granted.

ENTER:

P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: 1/24/02

# United States District Court

## Northern District of Illinois

### Western Division

DOCKETED
JAN 2 4 2002

| | |
|---|---|
| MARTHA COLEMAN | **JUDGMENT IN A CIVIL CASE** |
| v. | Case Number: 00 C 50452 |
| KENNETH APFEL | |

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. Judgment is entered in favor of the defendant and against the plaintiff.

Michael W. Dobbins, Clerk of Court

Date: 1/24/2002

Gale L. Graeff, Deputy Clerk